**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| MICHELLE MATTOX, | ) | C/A No. 9:14-CV-00384-DCN-MGB |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | OF THE MAGISTRATE JUDGE |
| CITY OF BEAUFORT, JOSH DOWLING, | ) | |
| TRISHA GUTTERSON, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

The Plaintiff brings this action under Title 42, United States Code, Section 1983 and under South Carolina state law.  The Plaintiff's Amended Complaint contains causes of action for False Arrest/False Imprisonment, Gross Negligence, Slander/Libel *Per Se*, Abuse of Process, Malicious Prosecution, and Civil Rights Violations 42 U.S.C. Sections 1983 and 1988.  (Dkt. No. 10.)  This matter is before the court on Defendant's Motion for Summary Judgment. (Dkt. No. 29.)  Under Local Civil Rule 73.02(B)(2) of the United States District Court for the District of South Carolina, pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge.

The Plaintiff brought this action on or about January 14, 2014, in the Beaufort County Court of Common Pleas, and the Defendants removed the case to federal court on February 13, 2014.  (Dkt. No. 1.)  The Plaintiff filed her Amended Complaint, with leave of the court, on March 6, 2014, and the Defendants answered on March 17, 2014.  (Dkt. Nos. 10, 11.)  The Defendants filed their Motion for Summary Judgment and Memorandum in Support ("Memorandum") on December 15, 2014.  (Dkt. No. 29.)  The Plaintiff responded on January 14, 2015, and the Defendants replied on January 26, 2015.  (Dkt. Nos. 36, 39.)

1

# ALLEGED FACTS[1]

Defendants Dowling and Gutterson were officers with the City of Beaufort Police Department at all times relevant in the Amended Complaint.  (Dkt. Nos. 29-2, 29-7.)  Defendants Dowling and Gutterson were participating in a Drug Enforcement Agency ("DEA") drug investigation involving Kimberly Filbert in 2012.  (Id.)  On May 29, 2012 Kimberly Filbert was arrested on six counts of forgery unrelated to the drug investigation and held in the Beaufort County Detention Center (BCDC).  (Dkt. 36 at 1.)  Filbert is the Plaintiff's daughter and had a child, who is deceased, with the victim of the forgeries, Joe Estrada.  (Dkt. No. 36-1.)  The total amount of the forged checks was approximately $125.00.  (Id.)  Defendants Dowling and Gutterson requested a high bond on the forgery charges and bond was set at $60,000.  (Id.)

Following Filbert's arrest, Defendants Dowling and Gutterson sought to have Filbert cooperate in the DEA investigation.  (Dkt. No. 36-1; Dkt. 29-3)  Defendants Dowling and Gutterson came to Filbert multiple times pressuring her to cooperate and told her "they would make trouble for anyone" who aided her in being released from BCDC.  (Id.)  Defendants Dowling and Gutterson called Filbert's family members and in-laws telling them not to aid Filbert.  (Id.)

Defendants Dowling and Gutterson monitored Filbert's recorded jail phone calls, some of which were placed to her mother, the Plaintiff.  (Dkt. No. 29-2.)  The contents of these calls between Filbert and the Plaintiff led Defendant Dowling to investigate the Plaintiff.  (Id.)  Defendant Dowling included detailed information on the contents of the recorded telephone calls

---

[1] In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  Therefore these alleged facts are construed in a light most favorable to the Plaintiff.

in his Incident Report and these recordings have been provided to the court.  (See Dkt Nos. 29-3, 29-8.)  These statements include the following:[2]

Filbert: I want freaking Joe to drop the charges on me; he said he was going to.

Mattox: Have you talked to him?

Filbert: No, I can't call his phone.

Mattox: I'll see if I can get him today.[3]

* * *

Filbert: Tell him all he has to do is drop the charges, and I'll go and pay those stupid checks.

Mattox: Alright.

Filbert: That I have a couple of hundred, and I can go pay them but he has to drop the charges so I can get out.

Mattox: Alright.

Filbert: And, I mean, just stress it to him.

Mattox: Huh?

Filbert: Just stress it to him.

Mattox: I will.

Filbert: Tell him I'm facing seven years in prison for every single check, and there are six of them.[4]

* * *

Filbert: He's got to go to the Solicitor's Office and tell them that he wants to drop the charges.

Mattox: Ok, I will call back and let him know that.[5]

---

[2] The court reviewed Dkt. No. 29-3 using Windows Media Player.  All times referenced are the playback times in Windows Media Player.

[3] Dkt. No. 29-3, File Name: 10.62.0.21-b279912d0a3e00156f195929f3250571 at 4:09.

[4] Dkt. No. 29-3, File Name: 10.62.0.21-b279912d0a3e00156f195929f3250571 at 7:35.

[5] Dkt. No. 29-3, File Name: 10.63.0.21-b34481650a3f0015112a39aaecfefc05 at 00:48.

\* \* \*

Filbert: Talk to him and tell him what I told you, and tell him I said thank you and before I go to treatment the first thing I am going to do is pay back that money.

Mattox: Alright.

Filbert: I swear to God, but he's got to go in there and be like I want these charges dropped now, and I want her released now.

Mattox: Alright, I'll tell him that.

Filbert: Thank you.[6]

\* \* \*

Filbert: Were you able to talk to him again?

Mattox: Yes.

Filbert: What did he say, what did you tell him?

Mattox: Be there first thing in the morning at the Solicitor's Office, OK.[7]

The Plaintiff made one phone call to Estrada.  (Dkt. No. 29-4.)  Defendant Dowling called Estrada as part of his investigation and recorded the phone call.  (Id.)  The following is the conversation in part starting at 00:50 into the recording:

Dowling: What day did Michelle Mattox reach out to you?

Estrada: Like the last day or two.

Dowling: Did she reach out via telephone?

Estrada: Yeah.

Dowling: So she called you up on this phone number I'm calling right now?

Estrada: Yeah, yeah, yes sir.

Dowling: . . . What specifically did Michelle state to you?

---

[6] Dkt. No. 29-3, File Name:  10.63.0.21-b34481650a3f0015112a39aaecfefc05 at 6:16.
[7] Dkt. No. 29-3, File Name:  10.64.0.21-b4a906210a400015410163f6769c0f80 at 4:30.

Estrada: She just wanted me to drop the charges, 'cause she didn't want her daughter in jail.

Dowling: Did she offer you something?

Estrada: Oh no, she didn't offer me nothing. No. She didn't do that, no.

Dowling: I thought, earlier you had said she was going to pay your restitution.

Estrada: Oh she, she wanted to pay, pay the stuff, yeah, but that's about it.

Dowling: How much money was she offering you?

Estrada: Ah, she didn't say. I don't know, because I don't really know how much, how much money, you know they owe in Publix, you know, what she did in Publix.

Dowling: . . . I'm trying to ascertain, what did she specifically say when she called up, in your own words?

Estrada: She just said, ah, if I drop the charges and she get out of jail, they'll try to pay everything that they owe at Publix. And, and that's it.

***

Dowling: There's been no transfer of money?

Estrada: No, no, no. no, we just talked on the phone. We didn't see each other or nothing.

Dowling: How many times did she call you up?

Estrada: Only one time.[8]

(Dkt. No. 29-4.)

On June 11, 2012, Defendant Dowling appeared before the Honorable Richard Arlen

Brooks.[9]  Judge Brooks issued Defendant Dowling arrest warrants N-165071 and N-165072 for

---

[8] Defendant Dowling states in his affidavit that Estrada "confirmed that plaintiff Mattox contacted him and asked him to agree to drop the forgery charges against Ms. Filbert in exchange for compensation."  (Dkt. No. 29-2.)  Based on the court's review of the actual recorded conversation and when viewed in a light most favorable to the Plaintiff, Estrada is clear that he was not offered anything to drop the charges and that Filbert and Mattox  promised to pay back "everything that they owe at Publix." (Dkt. No. 29-4.)

"Conspiracy" and "Public official, bribes, influence action of public employee, member, official or witness" respectively.  (Dkt. No. 29-10.)  Judge Brooks issued both warrants based solely on the sworn affidavits on the faces of the warrants.  (Dkt. No. 36-3.)  Defendant Dowling swore before Judge Brooks the affidavits were "true and correct."  (Id.)  In warrant N-165071, Defendant Dowling swore "Ms. Mattox, via recorded jail phone calls, did enter a conspiracy…to contact…Estrada to influence his testimony…by offering money to the victim.  This criminal offense is corroborated by the victim who stated he was offered money by the defendant…." (Dkt. No. 29-10.)  In warrant N-165072, Defendant Dowling swore "Ms. Mattox…did agree…to contact Mr. Joe Estrada and offer him money for the agreement [sic] he dismiss the pending General Session charges against Ms. Filbert. This criminal offense is corroborated by the victim who stated he was contacted by the defendant and offered money in return for dismissing the charges…."  (Id.)

Following the filing of this lawsuit, Judge Brooks reviewed excerpts of the jail phone calls and the phone call between Defendant Dowling and Estrada. (Dkt. No. 36-3.)  Judge Brooks states in his affidavit that he would not have issued the warrants had he known that there was no attempt to influence testimony but rather Estrada was asked to go to the solicitor.  (Id.)  Judge Brooks swears that these facts would have been "critical" in his finding of probable cause, and based on his review of the calls, he "see[s] no facts from which one could conclude testimony was sought to be influenced or bought by money."  (Id. at ¶13.)  Judge Brooks further states that, based on the recorded call with Estrada he "could not have concluded that Mr. Estrada corroborated that he was offered money" because "the recording confirms he was not offered money," but rather "Filbert would make restitution to a third party (Publix)."  (Id. at 15.)

---

[9] Judge Brooks is "a duly sworn magistrate for the County of Beaufort, State of South Carolina and held such judicial office on and before June 11th 2012 [sic]." (Dkt. No. 36-3.)

Judge Brooks states in his affidavit that, based on "what actually occurred in the recorded calls," he would not have issued either warrant.  (Id. at 16.)

After receiving the arrest warrants from Judge Brooks, Defendant Dowling contacted Defendant Gutterson to assist him in arresting the Plaintiff.  (Dkt. No. 29-7.)  The Plaintiff was arrested on June 11, 2012, and transported to BCDC.  (Dkt. No. 29-2.)  While the Plaintiff was being arrested, Defendant Gutterson told her "I told you not to try and help your daughter get out of jail."  (Dkt. No. 36-2.)  Once in BCDC, the Plaintiff called a bail bondsman and reported the charges and facts surrounding them over a recorded jail phone line that was monitored by Defendant Dowling.  (Dkt. No. 29-2 at ¶14.)  The Plaintiff spent "several days" in BCDC and lost her job as a result of being arrested.  (Dkt. Nos. 36 at 5; 10 at ¶14.)

Both of the Plaintiff's warrants were dismissed at the preliminary hearing by the Honorable Ralph E. Tupper.  (Dkt. No. 29-1; See Also 36-1 at ¶11.)  According to the Amended Complaint, the charges were no-billed by the Beaufort County Grand Jury as well.[10]  (Dkt. No 10 at ¶7.)

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News

---

[10] Under South Carolina law, a solicitor may "direct indict" an individual on a charge without an underlying warrant.  In such as case, the solicitor may present facts to the grand jury to seek an indictment without a pending arrest warrant or after a warrant was dismissed at a preliminary hearing.  See e.g Altman v. Griffith, 372 S.C. 388, 402, 642 S.E.2d 619, 627 (Ct. App. 2007).  In the case at bar, the court's best guess as to how the Plaintiff's charges were dismissed by Judge Tupper at the preliminary hearing and then still presented to the grand jury is that they were presented to the grand jury as a direct indictment, but the indictment was no-billed.

& Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## ANALYSIS

### 1. 42 U.S.C. § 1983 Claims

This court recommends the Defendants' Motion for Summary Judgment on the Plaintiff's §1983 claims be denied as to Defendant Dowling and granted as to the remaining Defendants because there is a genuine issue of material fact as to whether the Defendant Dowling is protected by qualified immunity.  In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); see also Gomez v. Toledo, 446 U.S. 635, 540 (1983); Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980).  In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).

The Plaintiff alleges in her Amended Complaint that the Defendants deprived her of her "Fourth Amendment and Fourteenth [Amendment] rights to be free from unreasonable seizure and incarceration" and her Fifth and Fourteenth Amendment due process rights "[b]y attempting to manufacture a crime where none existed." (Dkt. No. 10 ¶36.)  "The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an

individual effected without probable cause is unreasonable." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 183 (4th Cir. 1996) (citing Graham v. Connor, 490 U.S. 386, 396–97 (1989)). In viewing the facts in a light most favorable to the Plaintiff, the Plaintiff was arrested, held, and charged under two warrants that were dismissed for lack of probable cause. The warrants were obtained by Defendant Dowling by submitting to a county magistrate judge sworn affidavits that contained material falsehoods and lacked sufficient facts to satisfy the elements of the crimes on the warrants. A seizure under these circumstances violates the Fourth Amendment and is actionable under § 1983. See Brooks 85 F.3d at 183-184 (holding "[plaintiff's] allegations that [the defendant officer] seized him pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a § 1983 malicious prosecution claim alleging a seizure that was violative of the Fourth Amendment"). Defendants Dowling and Gutterson were both acting in their capacity as police officers under the color of state law during the alleged events. (Dkt. Nos. 29-2, 29-7.) A genuine issue of material fact exists as to whether the Plaintiff was deprived of her constitutional rights by the Defendants acting under color of state law; therefore the court must address whether Defendants Dowling and Gutterson are shielded from §1983 liability by the doctrine of qualified immunity.

"Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects officers from liability for "bad guesses in gray areas" and bases liability on the violation of bright-line rules. Id. (quoting Braun v. Maynard, 652 F.3d 557, 560 (4th Cir. 2011)). To determine whether a defendant is entitled to qualified immunity, the court must examine whether the defendant violated the plaintiff's constitutional or statutory rights and, if so, whether the defendant's

9

"conduct was objectively reasonable in view of the clearly established law at the time of the alleged event." Id.  When determining if qualified immunity should be applied in a motion for summary judgment, genuine questions of material facts must be left for the jury to determine. Willingham v. Crooke, 412 F.3d 553, 559 (4th Cir. 2005) (holding "while the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred ... must be reserved for trial.'" (quoting Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir.1992))).

A genuine issue of material fact exists as to whether Defendant Dowling is immune from suit under the doctrine of qualified immunity, and his Motion of Summary Judgment on the §1983 claim should be denied.  As discussed *supra*, a genuine issue of material fact exists as to whether the Plaintiff was deprived of her constitutional rights when she was charged, arrested, and held.  The court must now determine if Defendant Dowling's conduct was objectively reasonable under the clearly established law at the time.  The Plaintiff's illegal seizure and due process claims rely on her allegations that Defendant Dowling unreasonably falsified his sworn affidavits he presented to Judge Brooks to obtain arrest warrants N-165071 and N-165072.  The Plaintiff must prove that Defendant Dowling "deliberately or with a 'reckless disregard for the truth' made material false statements in his affidavit, or omitted from that affidavit 'material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.'" Miller v. Prince George's Cnty., MD, 475 F.3d 621, 627 (4th Cir. 2007) (quoting Franks v. Delaware, 438 U.S. 154,171 (1978); United States v. Colkley, 899 F.2d 297, 300 (4th Cir.1990)).

The Miller Court held that "[r]eckless disregard can be established by evidence that an officer acted 'with a high degree of awareness of [a statement's] probable falsity,' that is, 'when

viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" Miller, 475 F.3d at 627 (quoting Wilson v. Russo, 212 F.3d 781, 788 (3d Cir.2000) (modifications in original). Omissions may reach "reckless disregard" as required by Miller if the officer did not relay to the judge facts he "knew would negate probable cause." Miller, 475 F.3d at 627 (quoting Beauchamp v. City of Noblesville, Inc., 320 F.3d 733, 743 (7th Cir.2003)). To satisfy the standard set by Miller, the officer's false statements or omissions must be more than "negligence or innocent mistake." Miller, 475 F.3d at 627-628 (quoting Franks, 438 U.S. at 171).

To violate the Plaintiff's constitutional rights, the false statements or omissions must be "material," as well. Miller, 475 F.3d at 628. Franks defined "material" to mean "necessary to the finding of probable cause" Franks, 438 U.S. at 156. "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause.'" Miller, 475 F.3d at 628 (quoting Wilson, 212 F.3d at 789). "If the 'corrected' warrant affidavit establishes probable cause, no civil liability lies against the officer." Id. In other words, if the warrant is corrected to be a full and accurate statement of the facts and probable cause exists, the officer is protected by qualified immunity.

The Plaintiff was charged in warrant N-165072 with violation of S.C. Code § 8-13-705(d), which reads as follows:

> (D) A person may not, directly or indirectly, ask, demand, exact, solicit, seek, accept, assign, receive, or agree to receive anything of value in return for influencing testimony under oath or affirmation in a trial or other proceeding before:
> (1) a court….

S.C. Code Ann. § 8-13-705.  Defendant Dowling's affidavit submitted to support warrant N-165072 contains material false statements and omits material facts.  The affidavit portion of warrant N-165072 reads in part:

> I further state that there is probable cause to believe that [Ms. Mattox] did commit the crime set forth and that probable cause is based on the following facts: On June 3, 2012 [Ms. Mattox], via recorded jail calls, did agree to render assistance to Ms. Kimberly Filbert, to contact victim Mr. Joe Estrada and offer him money for the agreement he dismiss the pending General Sessions charges against Ms. Filbert.  This criminal offense is corroborated by the victim who stated he was contacted by [Ms. Mattox] and offered money in return for dismissing the charges.

(Dkt. No. 29-10.)

Based on the recorded calls that are in the record between the Plaintiff and Ms. Filbert and Defendant Dowling and Mr. Estrada, the affidavit contains two significant false statements.  Ms. Mattox never agreed to offer Mr. Estrada money on the recorded phone calls with Ms. Filbert. Ms. Mattox agreed to promise Estrada that Filbert would pay Publix back for the forged checks.[11] Secondly, Mr. Estrada did not "corroborate" he was offered money to dismiss the charges.  To the contrary, when Defendant Dowling asked Estrada if the Plaintiff offered him anything to drop the charges, Estrada replied "[o]h no, she didn't offer me nothing."  (Dkt. No. 29-4.)  Defendant Dowling then prompted Estrada that Ms. Mattox had agreed to pay back "restitution," and Estrada replied "She just said, ah, if I drop the charges and she get out of jail, they'll try to pay everything that **they owe at Publix**."  Id. (emphasis added).  Estrada never said the Plaintiff offered to pay him any money, or that he owed Publix any money that they would pay for him.[12]

---

[11] See transcript of phone calls discussed in Alleged Facts *supra*.

[12] The Defendants argue in their Memorandum that the Plaintiff offering to pay Publix restitution somehow met the definition of "anything of value" as defined in S.C. Code § 8-13-100.  The Defendants point specifically to "anything of value" as being defined as "a promissory note…check…given for payment of money;…forgiveness of indebtedness;…a loan or

12

The affidavit submitted to support warrant N-165072 omits several material facts. The affidavit omits that Mattox's request was for Estrada to go to the *solicitor's office* to request the charges be dropped. Both the recorded jail calls and the recorded call between Defendant Dowling and Estrada are clear that the request was for Estrada to go to the solicitor's office and ask the solicitor to drop the charges. Another significant omission is related to the false statements concerning offering Estrada money. The affidavit submitted to support warrant N-165072 never mentions that the money would not be paid to Estrada but to Publix. The court notes that nowhere in the affidavit does Defendant Dowling state that the Plaintiff's "offer" to Estrada was to influence "testimony under oath or affirmation in a trial or other proceeding before a court." S.C. Code Ann. § 8-13-705. This is a significant omission when viewed in conjunction with the false statement regarding testimony in warrant N-165071 discussed *infra*.

Warrant N-165071 for conspiracy is substantially similar to warrant N-165072 in its false statements and omissions; however, it contains an even more glaring false statement. Defendant Dowling swore in Warrant N-165071 that "Mattox, via recorded jail phone calls, did enter a conspiracy with…Ms. Kimberly Filbert, to contact…Estrada to influence his testimony." (Dkt. No. 29-10.) This sentence contained in the affidavit has no basis anywhere in the record, and the assertion that the Plaintiff sought to influence testimony is completely false. Testimony was never mentioned on any of the recorded phone calls.

The facts in this case are not hard to determine as the record contains the actual evidence Defendant Dowling used to formulate his probable cause affidavits for warrants N-165071 and

---

forgiveness of indebtedness;…any other item of pecuniary value or compensatory worth to a person." (Dkt. No. 29-1 (citing S.C. Code § 8-13-100).) The promise made by Ms. Mattox that Filbert would pay her restitution to Publix is not a promissory note or check. There was no forgiveness of indebtedness or a loan on the part of the Plaintiff or Ms. Filbert. The offer was that Ms. Filbert would pay the money she owed to Publix satisfying her own debt to Publix. There was no offer of "any other item of pecuniary value or compensatory worth" to be given to Estrada.

N-165072.  The recorded jail calls and recorded phone call between Defendant Dowling and Estrada provide the court the opportunity to compare the actual evidence with the affidavits submitted in support of the warrants.  The false statements and omissions are more than mere negligence or a good faith mistake.  Based on the number and significance of the false statements and omissions, this is at best flagrantly reckless police work and at worst an officer being purposefully deceitful to a court in order to arrest the Plaintiff for no just cause.

The court must now perform "the reconstructive surgery required by our jurisprudence, and assess whether the statements and omissions made with reckless disregard of the truth were 'material, or necessary, to the finding of probable cause'" as required in Miller and Franks.  Wilson, 212 F.3d at 789.  Probable cause exists when the totality of the circumstances within an officer's knowledge "are sufficient to lead a reasonable person to believe that a crime has been committed by the person being arrested."  State v. Baccus, 367 S.C. 41, 49, 625 S.E.2d 216, 220 (2006).  A corrected version of warrant N-165072 would read in part (corrections in italics):

> I further state that there is probable cause to believe that [Ms. Mattox] did commit the crime set forth and that probable cause is based on the following facts: On June 3, 2012 [Ms. Mattox], via recorded jail calls, did agree to render assistance to Ms. Kimberly Filbert, to contact victim Mr. Joe Estrada and offer *to ensure Ms. Filbert paid Publix the money she owed them* for the agreement he *go to the solicitor's office and request they* dismiss the pending General Sessions charges against Ms. Filbert.  This criminal offense is corroborated by the victim who stated he was contacted by [Ms. Mattox] and offered *nothing personally and that Ms. Filbert would satisfy her restitution to Publix* in return for *him going to the solicitor's office and requesting they* dismiss*[]* the charges.

(Dkt. No. 29-10.)

The corrected version of the warrant is lacking several elements required to charge under S.C. Code § 8-13-705(d).  Ms. Mattox did not "directly or indirectly, ask, demand, exact, solicit, seek, accept, assign, receive, or agree to receive anything of value…."  She did not attempt to influence "testimony under oath or affirmation in a trial or other proceeding before…a court."

Probable cause does not exist after correcting the warrant, and the false statements and omissions are material.[13]  In addition to the analysis required by Miller and Franks, the court bases its finding that the false statements and omissions are material on the affidavit of Judge Richard Arlen Brooks.  (Dkt. No. 36-3.)  Judge Brooks' affidavit delineates several false statements and omissions that were "critical" to his findings of probable cause.  (Id.)  Judge Brooks sums up his affidavit by stating "from a review of what actually occurred in the recorded calls, I would not have issued the warrants, because merely offering to pay restitution for a request to drop charges, if the solicitor agrees is not a crime."[14]  (Id. at ¶16.)  In viewing the facts in a light most favorable to the Plaintiff, a genuine issue of material fact exists as to whether Defendant Dowling is immune from suit under the doctrine of qualified immunity because he did not act in an objectively reasonable manner when he arrested the Plaintiff based on a warrant he obtained by swearing an affidavit with multiple material false statements and omissions.  As to Defendant Dowling, this court recommends his Motion for Summary Judgment on the §1983 claims be denied.

---

[13] Having found the false statements and omissions in warrant N-165072 to be material, the court finds the false statements and omissions in warrant N-165071 to be material as well.  As this court finds warrant N-165072 lacked probable cause, warrant N-165071 necessarily lacked probable cause as well.  Warrant N-165071 is a conspiracy warrant and as such cannot stand without the underlying offense for the conspiracy.  Additionally, as discusses supra, N-165071 is substantially similar to warrant N-165072 in its false statements and omissions with the one even more gross false statement.

[14] Judge Brooks aptly cites to Johnson v. Painter, 279 S.C. 390, 307 S.E.2d 860 (1983) to support this proposition.  The Johnson court held that there was "nothing wrong" with a criminal defense attorney contacting the victim of a crime and offering to pay restitution to the victim in exchange for the victim requesting the solicitor drop the charges.  Johnson was "clearly established law" at the time Defendant Dowling obtained the warrants for the Plaintiff.  "In determining whether a right was clearly established at the time of the claimed violation, 'courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose....'" Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999) (alteration in Edwards) (quoting Jean v. Collins, 155 F.3d 701, 709 (4th Cir.1998) (en banc )).

No genuine issue of material fact exists as to whether Defendant Gutterson is immune from suit under the doctrine of qualified immunity, and her Motion of Summary Judgment on the § 1983 claim should be granted.  Defendant Gutterson's involvement in this case was far less than Defendant Dowling.  Defendant Gutterson was involved in the DEA investigation involving Filbert and pressured Filbert to speak with her.  (Dkt. No. 29-7; 36-1.)  Defendant Gutterson took part in telling Filbert's family and friends not to help her get out of jail and listened to Filbert's jail calls.  (Dkt. No. 29-7; 36-1.)  Defendant Gutterson was present during the Plaintiff's arrest and allegedly told her "I told you not to try and help your daughter get out of jail."  (Dkt. No. 36-2.)  Notably, Defendant Gutterson was not present when Defendant Dowling sought the arrest warrants from the magistrate, did not participate in investigating the Plaintiff, and never spoke to Estrada.

While the Plaintiff argues that "[i]t is apparent, or at least reasonably inferable from the evidence that Gutterson and Dowling worked closely together in Filbert's investigation and the Plaintiff's arrest," there is no evidence in the record that Defendant Gutterson violated the Plaintiff's constitutional or statutory rights or that her actions were not objectively reasonable under the law.  Defendant Dowling's alleged unconstitutional conduct and objectively unreasonable actions are founded on the affidavits he swore to Judge Brooks in charging the Plaintiff.  Defendant Gutterson's involvement in the DEA investigation is irrelevant to the inquiry at hand.  While Defendant Gutterson did aid in arresting the Plaintiff in violation of her Fourth Amendment rights, there is no evidence Defendant Gutterson knew of the untoward acts undertaken by Defendant Dowling to obtain the warrants.  Her actions were objectively reasonable when she helped a fellow sworn officer serve a valid arrest warrant.  An officer cannot be held liable for executing a facially valid arrest warrant.  See Porterfield v. Lott, 156 F.3d 563 (4th Cir. 1998); Brooks v. City of Winston–Salem, 85 F.3d 178 (4th Cir.1996).  Unlike

16

Defendant Dowling, Defendant Gutterson was not involved with investigating the Plaintiff or obtaining the warrants against her from Judge Brooks. She reasonably believed the warrants against the Plaintiff were valid and reasonably aided in executing the warrants by helping arrest the Plaintiff. This court recommends that as to the § 1983 claims against Defendant Gutterson, her Motion for Summary Judgment be granted because there is no genuine dispute of material fact and she is entitled to judgment as a matter of law because she is shielded from suit by the doctrine of qualified immunity.[15]

The Plaintiff has also named the City of Beaufort as a Defendant. Defendants "cannot be held liable solely because [they] employ[] a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978). Pursuant to Monell, a municipality or other local government entity may be liable under § 1983 for the violation of a plaintiff's constitutional rights, but only where the constitutionally offensive actions of employees are taken in furtherance of some municipal policy or custom. See Monell, 436 U.S. at 694; see also Knight v. Vernon, 214 F.3d 544, 552 (4th Cir. 2000). The Plaintiff's allegations against the city are that it employed the other Defendants as police officers. There are no allegations that a city policy or custom infringed on the Plaintiff's federal rights. Therefore, as to the City of Beaufort, no genuine dispute of material fact exists and this court recommends the Defendants' Motion for Summary Judgment be granted on Plaintiff's §1983 claims.

## 2. State Law Claims

---

[15] The Plaintiff argues that Defendant Gutterson should be held liable under the "collective-knowledge theory" as put forth in United States v. Massenburg, 654 F.3d 480 (4th Cir. 2011) and United States v. Hensley, 469 U.S. 221 (1985). (Dkt. No. 36 at 6-7.) Both of these cases concern motions to suppress evidence in criminal cases. There is no case law in the Fourth Circuit to apply the theory to impute liability in a civil lawsuit.

### a. False Arrest/False Imprisonment Claim

The Plaintiff's first cause of action is a state law claim for false arrest and imprisonment. "False imprisonment is 'deprivation of a person's liberty without justification.'"[16] Gist v. Berkeley Cnty. Sheriff's Dep't, 336 S.C. 611, 615, 521 S.E.2d 163, 165 (Ct. App. 1999) (quoting Caldwell v. K-Mart Corp., 306 S.C. 27, 30, 410 S.E.2d 21, 23 (Ct.App.1991)).  "An action for false imprisonment may not be maintained where the plaintiff was arrested by lawful authority." Gist 336 at 615. (citing Jones v. City of Columbia, 301 S.C. 62, 389 S.E.2d 662 (1990)).  It is undisputed in this case that the Plaintiff's arrest was made pursuant to two arrest warrants that were signed by the magistrate and valid on their face.  While genuine issues of material fact exist as to whether Defendant Dowling knowingly submitted a sworn affidavit to the magistrate judge that contained material false statements and omissions of material facts to procure the arrest warrants, the warrants were valid once they were signed by the magistrate.

The Plaintiff argues that Gist holds "[an] invalid arrest warrant does not shield an officer from liability" for false arrest.  (Dkt. No. 36 at 19.)  That is not an accurate characterization if the holding in Gist.  The analogous issue in Gist was whether the officer had presented sworn oral testimony before the magistrate to supplement the written affidavit on the face of the warrant.

---

[16] The Defendants argue in their Memorandum that Porterfield v. Lott, 156 F.3d 563 (4th Cir. 1998) is dispositive of the Plaintiff's false imprisonment claim.  Porterfield dealt with the application of the qualified immunity doctrine to a suit brought under § 1983 for a seizure in violation of the Fourth Amendment.  The Plaintiff's claim is brought under state law.  The qualified immunity doctrine shields officers from liability in federal claims.  See e.g. Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 335 (4th Cir. 2009) (holding "[q]ualified immunity against state law claims under North Carolina law requires a substantively different analysis from qualified immunity against a claim brought under 42 U.S.C. § 1983 alleging the violation of a federal right."); Bailey v. Kennedy, 349 F.3d 731, 737 (4th Cir. 2003) (affirming district court's denial of qualified immunity as to federal claims and denial of a state law-based immunity on state law claims).

Id.  In the case at bar, the issue of fact is whether Defendant Dowling knowingly submitted a sworn affidavit to the magistrate judge that contained material false statements and omissions of material facts to procure the arrest warrants.  Gist did not expand liability to make officers liable for serving an invalid arrest warrant.  Furthermore, nothing in the record in this case indicates the arrest warrants were "invalid."  They clearly indicated the crimes charged, contained a sworn affidavit, and were signed by the county magistrate in the proper jurisdiction.  In Whaley v. Lawton, 62 S.C. 91, 40 S.E. 128, 133 (1901), the Supreme Court of South Carolina held that when a warrant is signed by a magistrate based upon an affidavit that is later found to be lacking probable cause, the officer who obtained the warrant may not be sued for false imprisonment, but may be subject to a suit for malicious prosecution.  The Court of Appeals of Georgia summed up the law of false imprisonment and malicious prosecution thusly, "[i]f the plaintiff was arrested and prosecuted under a valid warrant, the action is malicious prosecution; if wrongfully under a void warrant ... the action is false imprisonment." Wilson v. Bonner, 166 Ga. App. 9, 11, 303 S.E.2d 134, 138 (1983) (quoting Smith v. Embry, 103 Ga.App. 375, 377, 119 S.E.2d 45 (1961) overruled by Ferrell v. Mikula, 295 Ga. App. 326, 333, 672 S.E.2d 7, 13 (2008) (holding Smith was overruled to the extent it held that an arrest *without* a warrant can constitute false/malicious arrest)).  No genuine issue of material fact exists as to the Plaintiff's state law claim for false arrest/false imprisonment, and this court recommends the Defendants' Motion for Summary Judgment be granted as to all Defendants.

### b.  Immunity on State Law Claims

With the exception of the Plaintiff's False Arrest/False Imprisonment claim, the Defendants' Memorandum does not specifically address the Plaintiff's state law claims.  The Defendants instead assert that the Defendants "share the Sovereign Immunity of the State of

South Carolina…and…all of the immunities and exceptions to the South Carolina Tort Claims Act, § 15-78-10 *et.*[sic] *seq.*"  The Defendants' Memorandum then concludes "[because] plaintiff's arrest was not false, but proper pursuant to valid arrest warrants no process was abused, plaintiff was not slandered, and there was no malicious prosecution."[17]  (Dkt. No. 29-1 at 16.)

The South Carolina Tort Claims Act, § 15-78-10 *et seq.* ("the Act") "governs all tort claims against governmental entities."  Hawkins v. City of Greenville, 358 S.C. 280, 292, 594 S.E.2d 557, 563 (Ct. App. 2004) (citing Flateau v. Harrelson, 355 S.C. 197, 203, 584 S.E.2d 413, 416 (Ct.App.2003)).  All governmental entities may be held liable for their torts as a private individual would be liable subject to the limitations and exemptions of the Act.  Id. (citing S.C. Code Ann. § 15-78-40 (Supp. 2003)).  S.C. Code Ann. § 15-78-30(d) defines "governmental entity" as "the State and its political subdivisions."  The Act is,

> the exclusive remedy for any tort committed by an employee of a governmental entity. An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except…if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.

S.C. Code Ann. § 15-78-70.  The limitations and exemptions in the act must be liberally construed in order to limit the liability of the State.  Hawkins, 358 S.C. at 292.  "The governmental entity asserting the Act as an affirmative defense bears the burden of establishing a limitation upon liability or an exception to the waiver of immunity."  Id.  S.C. Code Ann. § 15-

---

[17] The Defendants provide no citation to support their bare assertion that claims for abuse of process, slander/libel *per se*, and malicious prosecution cannot stand without an accompanying valid claim for false arrest.  None of these causes of action require false arrest as an element under South Carolina law.  See Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, 351 S.C. 65, 567 S.E.2d 251 (Ct. App. 2002); Parrish v. Allison, 376 S.C. 308, 656 S.E.2d 382 (Ct. App. 2007); Law v. S. Carolina Dep't of Corr., 368 S.C. 424, 629 S.E.2d 642 (2006).

78-60 provides thirty seven "exceptions" to the limited waiver of sovereign immunity the Act

provides.  Id.

The Defendants have failed to meet their burdens required by the Act and Rule 56, Fed.

R. Civ. P. to show that they are shielded by "a limitation upon liability or an exception to the

waiver of immunity."  Id.  Fed. R. Civ. P. Rule 56 places the burden on the moving party to show

there is no genuine dispute of material fact and they are entitled to summary judgment as a

matter of law.  "It is not enough to move for summary judgment without supporting the motion

in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case."

Celotex Corp. v. Catrett, 477 U.S. 317, 328 (1986) (White, J., concurring).  The Defendants must

show that they are immune under the Act.  Hawkins, 358 S.C. at 292; Steinke v. S. Carolina

Dep't of Labor, Licensing & Regulation, 336 S.C. 373, 393, 520 S.E.2d 142, 152 (1999); Strange

v. S. Carolina Dep't of Highways & Pub. Transp., 314 S.C. 427, 430, 445 S.E.2d 439, 440

(1994).  The Defendant's Memorandum contains little more than bare assertions that they are

immune under the Act.  (Dkt. No. 29-1).  The Memorandum merely claims immunity and cites to

the Act.   The Memorandum does not individually analyze or even identify the state law claims.

There is no discussion of the Plaintiff's causes of action, their elements, or how the Act limits or

bars liability.  The only direction the Defendants give the court is citing to 2 of the 37

"exceptions" to the Act's waiver of sovereign immunity along with a section barring punitive

and exemplary damages.  (Dkt. No. 29-1 at 15.)  The Defendants do not even limit the Act's

applicability to the three cited sections instead claiming "all of the immunities and exceptions

[given by the Act] including, but without limitation, these [3 sections]."  (Dkt. No. 29-1 at 15.)

The Defendants never give any analysis of how any of these sections apply to the Plaintiff's

specific claims.  The Memorandum's entire argument for immunity is contained on one page,

half of which is block quotes of three sections of the Act.  The burden of showing sovereign

immunity and the Act's application is on the Defendants, not the court.  Therefore, as to the state law claims, the Defendants have failed to meet their burden to show they are immune under the Act, and this court recommends their Motion of Summary Judgment on these grounds  be denied.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 29.) on the §1983 claims be DENIED as to Defendant Dowling and GRANTED as to Defendants Gutterson and City of Beaufort; on the False Arrest/False Imprisonment claims be GRANTED as to all Defendants; and on the Gross Negligence, Slander/Libel *Per Se*, Abuse of Process, and Malicious Prosecution claims be DENIED as to all Defendants.

IT IS SO RECOMMENDED.

June 29, 2015

Charleston, South Carolina

_____

MARY GORDON BAKER

UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).